UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------- X
MARTIN JOSEPH, ISRAEL HOFFMAN, SHAINDY : Case No.
HOFFMAN, M.H., by his next friend and parent Israel :
Hoffman, C.H., by her next friend and parent Israel : **COMPLAINT**
Hoffman, L.H., by his next friend and parent Israel :
Hoffman, JACOB MOSKOWITZ, PERL :
MOSKOWITZ, S.M., by his next friend and parent :
Jacob Moskowitz, JOSEPH LEIB GODINGER, :
MINDY GODINGER, M.Y.G, by his next friend and :
parent Joseph Leib Godinger, M.G. by her next friend :
and parent Joseph Leib Godinger, DAVE FRIEDMAN, :
and MALKA FRIEDMAN, :
:
                        Plaintiff(s), :
:
    -against- :
:
FRONTIER AIRLINES, INC, :
:
                        Defendant(s). :
------------------------------------------------------------------- X

Plaintiffs, by and through their attorneys, Gutman Weiss, P.C., complaining of Defendant FRONTIER AIRLINES, INC., allege as follows:

1. Plaintiffs bring this action for declaratory, injunctive, and monetary relief against FRONTIER AIRLINES, INC ("FRONTIER") based upon FRONTIER's grievous acts of invidious discrimination.

2. FRONTIER unlawfully and discriminately removed thirteen passengers who were all identifiably orthodox Jews from a flight simply because the passengers were Jewish. To cover for their actions, FRONTIER then made false accusations of non-compliance with Covid-19 guidelines in an attempt to justify their facially discriminatory actions.

3. FRONTIER's actions were intentional and in violation of 42 USC § 1981.

4. In addition to compensatory and punitive damages, Plaintiffs seek declaratory and injunctive relief requiring FRONTIER to cease and remedy its discriminatory conduct.

5. This action is brought to ensure that the promises of equal treatment embodied in federal anti-discrimination laws do not become meaningless guarantees for Jewish people, as well as to combat the troubling rise in anti-Semitic incidents that have become all too common in recent memory.

## PARTIES

6. At all times hereinafter mentioned, MARTIN JOSEPH was and still is a natural person residing in Kings County, New York, and is a citizen of New York.

7. At all times hereinafter mentioned, ISRAEL HOFFMAN was and still is a natural person residing in Kings County, New York, and is a citizen of New York.

8. At all times hereinafter mentioned, SHAINDY HOFFMAN was and still is a natural person residing in Kings County, New York, and is a citizen of New York.

9. At all times hereinafter mentioned, M.H. was and still is a natural person and a minor child residing in Kings County, New York, and is a citizen of New York. This action is brought on behalf of M.H. by ISRAEL HOFFMAN, his father and next friend, pursuant to FRCP R. 17(c)(2).

10. At all times hereinafter mentioned, C.H. was and still is a natural person and a minor child residing in Kings County, New York, and is a citizen of New York. This action is brought on behalf of C.H. by ISRAEL HOFFMAN, her father and next friend, pursuant to FRCP R. 17(c)(2).

11. At all times hereinafter mentioned, L.H. was and still is a natural person and a minor child residing in Kings County, New York, and is a citizen of New York. This action is brought

on behalf of L.H. by ISRAEL HOFFMAN, his father and next friend, pursuant to FRCP R. 17(c)(2).

12. At all times hereinafter mentioned, JACOB MOSKOWITZ was and still is a natural person residing in Kings County, New York, and is a citizen of New York.

13. At all times hereinafter mentioned, PERL MOSKOWITZ was and still is a natural person residing in Kings County, New York, and is a citizen of New York.

14. At all times hereinafter mentioned, S.M. was and still is a natural person and a minor child residing in Kings County, New York, and is a citizen of New York. This action is brought on behalf of S.M. by Jacob Moskowitz, his father and next friend, pursuant to FRCP R. 17(c)(2).

15. At all times hereinafter mentioned, JOSEPH LEIB GODINGER was and still is a natural person residing in Kings County, New York, and is a citizen of New York.

16. At all times hereinafter mentioned, MINDY GODINGER was and still is a natural person residing in Kings County, New York, and is a citizen of New York.

17. At all times hereinafter mentioned, M.Y.G. was and still is a natural person and a minor child residing in Kings County, New York, and is a citizen of New York. This action is brought on behalf of M.Y.G. by Joseph Leib Godinger, his father and next friend, pursuant to FRCP R. 17(c)(2).

18. At all times hereinafter mentioned, M.G. was and still is a natural person and a minor child residing in Kings County, New York, and is a citizen of New York. This action is brought on behalf of M.G. by Joseph Leib Godinger, her father and next friend, pursuant to FRCP R. 17(c)(2).

19. At all times hereinafter mentioned, DAVE FRIEDMAN was and still is a natural person residing in Nassau County, New York, and is a citizen of New York.

20. At all times hereinafter mentioned, MALKA FRIEDMAN was and still is a natural person residing in Nassau County, New York, and is a citizen of New York.

21. Each Plaintiff is immediately visually recognizable as Jewish on account of their mode of dress.

22. Upon information and belief, at all times hereinafter mentioned, Defendant FRONTIER AIRLINES, INC ("FRONTIER") was and still is a Colorado corporation duly licensed to do business in the State of New York and conducting business in the State of New York.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises under the laws of the United States of America, to wit, 42 U.S.C. 1981.

24. This Court has subject matter jurisdiction under 28 U.S.C § 1332(a)(1) as Plaintiffs and Defendant are diverse and the sum in controversy exceeds $75,000.

25. This Court has personal jurisdiction over Defendant under FRCP § 4(k)(1)(A) by way of CPLR § 302(a)(i) and (iv) as (i) Defendant transacts continuous business within New York state and regularly contracts to supply services in New York state and (ii) Defendant owns, uses and/or possesses real property situated within New York state. Indeed, the contracts at issue in this Action involved the provision of services in New York state, to wit, the transportation of Plaintiffs into New York state.

26. Venue is proper under 28 U.S.C § 1391(b)(1) as Defendant resides in the Eastern District of New York as that term is used in the statute.

## FACTUAL BACKGROUND

27. Each Plaintiff, individually, or through his or her agent, and in the case of minor plaintiffs, through his or her parent or parents, purchased an airline ticket from FRONTIER for FRONTIER's February 28, 2021 flight F9 2878 from Miami International Airport in Miami Florida to LaGuardia Airport in Queens, New York (the "Flight").

28. Plaintiffs arranged for the purchase of their tickets within the Eastern District of New York and the destination of the Flight was within the Eastern District of New York.

29. On the evening of February 28, 2021, each of the Plaintiffs arrived at Miami International Airport for the purposes of traveling to LaGuardia Airport on the Flight and each boarded the Flight.

30. With the exception of L.H. and S.M. each Plaintiff was wearing a proper facemask as required by TSA Security Directive SD 1544-21-02 and FRONTIER's own rules and regulations.

31. Both L.H. and S.M. were exempt from TSA Security Directive SD 1544-21-02 (the "Federal Mask Mandate") and FRONTIER's own rules and regulations as minor children under the age of two. See SD 1544-21-02(F)(2) and https://www.flyfrontier.com/committed-to-you.

32. Other minor passengers on the Flight under the age of two who were not visually identifiable as being Jewish were allowed to fly unmasked, as is allowed under the Federal Mask Mandate and FRONTIER's own rules.

33. Plaintiffs C.H., M.H., SHAINDY HOFFMAN, ISRAEL HOFFMAN, L.H., and JOSEPH GODINGER were each seated in row 31, the rearmost row of the airplane.

34. Plaintiffs JACOB MOSKOWITZ, PERL MOSKOWITZ, S.M., MIRIAM GODINGER, M.Y.G., and M.G. were each seated in row 30, the second to last row of the airplane. (the passengers in rows 30 and 31 are hereafter referred to as the "Rear Passengers").

35. Plaintiffs MARTIN JOSEPH, DAVE FRIEDMAN, and MALKA FRIEDMAN were seated in more forward rows of the airplane.

36. During the pre-departure period, two FRONTIER flight attendants repeatedly approached SHAINDY HOFFMAN and advised her that masks were required on the Flight.

37. SHAINDY HOFFMAN was taken aback by the repeated encounters as she was wearing a compliant mask as was the rest of her family apart from L.H. who was less than 2 years old.

38. SHAINDY HOFFMAN inquired of the flight attendants as to who it was they believed was not properly wearing a face mask, but the flight attendants refused to say.

39. Plaintiffs JACOB MOSKOWITZ, PERL MOSKOWITZ, and S.M. had not yet boarded the Flight at this point, and only first boarded the Flight following these interactions.

40. Thereafter, one of the flight attendants approached the rear two rows of the airplane and advised all of the Rear Passengers that they would be required to deplane.

41. The Rear Passengers inquired as to why they were being deplaned.

42. The flight attendant stated that due to an unidentified person in either row 30 or 31 failing to wear a mask, all twelve of the Rear Passengers would have to deplane. Despite repeated requests, the flight attendant adamantly refused to identify who had failed to wear a facemask.

43. The unifying theme amongst all of the Rear Passengers was that they were all visibly and identifiably Jewish.

44. And indeed, JACOB MOSKOWITZ, PERL MOSKOWITZ, and S.M. had only boarded the Flight just moments before the order for all of the Rear Passengers to deplane.

45. Thereafter, PERL MOSKOWITZ advised her father, MARTIN JOSEPH, that the flight attendants had demanded all twelve Rear Passengers deplane.

46. MARTIN JOSEPH attempted to intercede on behalf of the Rear Passengers by speaking with the flight attendants to determine who amongst the Rear Passengers had failed to comply with masking regulations.

47. Likewise, DAVE FRIEDMAN and MALKA FRIEDMAN similarly attempted to intercede with the flight attendants on behalf of the Rear Passengers.

48. Subsequently MARTIN JOSEPH was advised that he was required to deplane as well.

49. FRONTIER thereafter falsely alleged that MARTIN JOSEPH, DAVE FRIEDMAN and MALKA FRIEDMAN had also failed to abide my masking regulations, despite the fact that they were, at all times, properly masked.

50. Plaintiffs' forced ejection from the Flight, in view of all of the other passengers was both deeply humiliating and frightening. Indeed, the minor Plaintiffs were driven to tears by the traumatic experience.

51. Upon the Rear Passengers ejection from the Flight, the flight attendants were observed by a several passengers giving each other high fives and heard variously saying "we did it", "we got those people" "we got those Jews" and "a job well done to those Jews."

52. Following Plaintiffs ejection from the Flight, and to cover for their facially discriminatory conduct, FRONTIER reported to the TSA that each Plaintiff had failed to abide by the Federal Mask Mandate.

53. Accordingly, the TSA issued a "warning notice" to certain adult Plaintiffs stating that Plaintiffs "failed to comply with the federal mask mandate, as required" and made the "warning notice" a matter of record and part of [Plaintiffs'] compliance history."

54. Upon information and belief, FRONTIER's defamatory allegation of Federal Mask Mandate non-compliance to the TSA has caused Plaintiffs to become ineligible for TSA Precheck screening.

55. Following the forced ejection from the Flight, MARTIN JOSEPH, DAVE FRIEDMAN, and MALKA FRIEDMAN were each told that they had been issued lifetime bans from flying with FRONTIER.

## FIRST CAUSE OF ACTION
## 42 USC § 1981

56. Plaintiffs repeat and re-allege each and every allegation contained above as if more fully set forth herein.

57. 42 USC § 1981 provides, in relevant part, "all persons within the jurisdiction of the United States shall have the same right … to make and enforce contracts." The protections afforded under § 1981 extend to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

58. At all relevant times, the flight attendants were agents and employees of FRONTIER and FRONTIER is liable for their actions.

59. FRONTIER engaged in intentional discrimination based on Plaintiffs' perceived race, color, ethnicity, and/or alienage in ejecting Plaintiffs from the Flight.

60. But for Plaintiffs being Jewish, FRONTIER would not have engaged in the discriminatory conduct set forth herein.

61. FRONTIER's actions were motivated by racial animus.

62. This is demonstrated by FRONTIER ejecting each and every visibly Jewish person from rows 30 and 31, *en masse*, without any particularized allegation of any specific individual failing to comply with the Mask Mandate, and instead indiscriminately ejecting each person who appeared to be from the same racial group.

63. This is further demonstrated by the disparate treatment between passengers who were visibly identifiable as being Jewish and passengers not visually identifiable as being Jewish with respect to the apparent baseless enforcement of the Mask Mandate as to children less than two years of age.

64. This is further demonstrated by the abhorrent racially charged comments made by the flight attendants in connection with ejecting Plaintiffs from the Flight.

65. This is further demonstrated by FRONTIER's false allegation that each of the visually identifiable Jewish passengers who attempted to intercede on the Rear Passengers' behalf had failed to comply with the Mask Mandate.

66. FRONTIER discriminated against Plaintiffs in the making and enforcement of their contracts with FRONTIER, namely their tickets to travel on the Flight and their ability to purchase tickets to fly with FRONTIER in the future.

67. Consequently, FRONTIER has caused Plaintiffs to suffer deprivation of their rights to make and enforce contracts as enjoyed by white citizens under 42 U.S.C. § 1981.

68. FRONTIER's actions were intentional, malicious, willful, wanton, callous, and showed reckless disregard for Plaintiffs' civil rights, and have directly and proximately caused Plaintiffs financial injury, humiliation, mental pain, and suffering.

69. Plaintiffs have no adequate remedy at law.

70. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

**WHEREFORE**, Plaintiffs demand judgment as follows:

(i) Entering a declaratory judgment that the actions of Defendant described above constituted discrimination on the basis of race, color, ethnicity, alienage, ancestry, and/or national origin in violation of 42 U.S.C. § 1981;

(ii) Entering a permanent injunction directing Defendant and its directors, officers, agents, and employees to take all affirmative steps necessary to remedy the effects of the illegal and discriminatory conduct described herein and to prevent similar occurrences in the future;

(iii) Awarding Plaintiffs compensatory damages in an amount to be determined at trial, but in no event less than $75,001 to each Plaintiff, for Plaintiffs' loss and injury including, but not limited to, economic losses, humiliation, embarrassment, emotional distress, and a deprivation of their rights to enter and enforce contracts and to travel as passengers in air transportation regardless of their race, color, ethnicity, alienage, ancestry, or national origin;

(iv) Awarding Plaintiffs punitive damages in an amount to be determined at trial that would punish Defendant for its willful, wanton, and reckless conduct and that would effectively deter Defendant from engaging in similar conduct in the future;

(v) Ordering Defendant to cease and desist from all future discrimination or retaliation against Plaintiffs;

(vi) Awarding Plaintiffs prejudgment interest;

(vii) Awarding Plaintiffs reasonable attorneys' fees and the costs incurred in this action; and;

(viii) Granting Plaintiffs such other relief as the Court deems appropriate and just.

Dated: Brooklyn, New York
October 28, 2021

>GUTMAN WEISS, P.C.
*Attorneys for Plaintiffs*

_____
By: Dov Medinets, Esq.
2276 Sixty-Fifth Street, 2nd Floor
Brooklyn, N.Y. 11204
(718) 259-2100